IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:23-CR-00141-M

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DEVANTE TYRELL BYNUM,

    Defendants.

ORDER

This matter comes before the court on Defendant's Motion to Dismiss the indictment pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure (the "Motion"). For the reasons that follow, the Motion is DENIED.

I.   **BACKGROUND**

Defendant was charged in a single-count indictment for possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). DE 1 at 1. He thereafter filed the Motion under Rule 12(b)(3)(B)(v). That Rule permits defendants to file pretrial motions addressing "a defect in the indictment," such as that the indictment "fail[s] to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment fails to state an offense (and must consequently be dismissed) if it "is premised on the defendant's alleged violation of an unconstitutional statute." *United States v. Riley*, 635 F. Supp. 3d 411, 416 (E.D. Va. 2022). When reviewing such a motion, courts accept as true the allegations in the indictment. *See Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952).

1

As the basis for the Motion, Defendant contends that "Section 922(g)(1) is facially unconstitutional and unconstitutional as applied to [him]" after the United States Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). DE 31 at 1. Defendant argues that his alleged conduct, possession of a firearm, "is presumptively protected" by the plain text of the Second Amendment. *Id.* at 1-2. Accordingly, Defendant asserts that "[t]he government cannot rebut that presumption[ because f]elon-disarmament laws . . . did not appear in the United States until the 20th century, [and] were unknown to the generation that ratified the Second Amendment." *Id.* at 2.

The United States responded, raising several arguments. *See generally* DE 34. First, the United States contends that Defendant's facial challenge fails because "he cannot show the Second Amendment right to keep and bear arms protects . . . possessing a firearm or ammunition *as a convicted felon*." *Id.* at 6 (emphasis added). In that regard, the United States highlights a series of Supreme Court decisions, including *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago, Illinois*, 561 U.S. 742 (2010), for the proposition that the Second Amendment right to keep and bear arms belongs only to "law-abiding, responsible citizens." *Id.* The United States adds that both *Heller* and *McDonald* observed the presumptive validity of the longstanding prohibition on the possession of firearms by felons. *See id.* at 8. According to the United States, *Bruen* reinforced the two aforementioned propositions. *See id.* at 7.

The United States further argues that *Bruen* did not upend existing Fourth Circuit precedent which, after *Heller and McDonald*, expressly recognized the constitutional validity of Section 922(g)(1), both on its face and as applied to individuals with prior convictions for violent felonies. *See id.* at 8-10 (referencing *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) and *United States v. Moore*, 666 F.3d 313 (4th Cir. 2012)). Finally, the United States asserts that, to the extent

2

*Bruen's* analytical framework governs Defendant's constitutional claim, Section 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation," citing Founding-Era laws authorizing capital punishment and estate forfeiture, as well as laws that disarmed those deemed a threat to public safety. *Id.* at 11-18.

Defendant replies that *Heller's* description of law-abiding citizens was a case-specific phrase that was not intended to and did not circumscribe the reach of the Second Amendment's plain text. *See* DE 39 at 2-6. Defendant further contends that the Founding-Era laws cited by the United States represent insufficient analogues to satisfy the new standard set forth in *Bruen. Id.* at 6-8. Finally, Defendant argues that the United States only addressed whether Section 922(g)(1) was constitutional on its face, and thus it waived any argument that the statute is constitutional as applied to Defendant. *Id.* at 9.

## II. ANALYSIS

As of this writing, more than 170 district courts have rejected post-*Bruen* constitutional challenges to Section 922(g)(1). *See United States v. Coleman*, No. 3:22-CR-87, 2023 WL 6690935, at *14 (E.D. Va. Oct. 12, 2023) (rejecting constitutional challenge and including appendix of 170 district court opinions to have done the same). This court joins those courts.

The court's analysis of Defendant's challenge does not start as a tabula rasa. "The ban against possession of firearms by all felons has been in place since 1961." *United States v. Bever*, No. 2:22-CR-00164, 2023 WL 2991870, at *1 (S.D.W. Va. Apr. 18, 2023). In *Heller*, the Supreme Court invalidated a District of Columbia law prohibiting "the possession of usable handguns in the home," *Heller*, 554 U.S. at 573, and in so doing recognized a Second Amendment right to keep and bear arms unconnected from service in a militia, *see id.* at 635 (defining purpose of Second Amendment as individual right to self-defense). However, the *Heller* Court described this

3

individual right as "not unlimited," and specifically observed that "longstanding prohibitions on the possession of firearms by felons" constituted "presumptively lawful regulatory measures." *Id.* at 626 & n.26. The majority opinion concluded by revisiting its prior discussion of laws prohibiting possession of firearms by felons, stating that such prohibitions remained as constitutionally-available "tools" for cities and states to address "the problem of handgun violence in this country." *Id.* at 636.

Two years later, the Supreme Court confirmed that *Heller's* central holding was "fully applicable to the States." *McDonald*, 561 U.S. at 750. It did so by concluding that the Second Amendment enshrined a "fundamental right" rendered applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Id.* at 778. The *McDonald* Court, though, again made clear that "incorporation [of the Second Amendment against the states] does not imperil every law regulating firearms." *Id.* at 786. Rather, the Court "repeat[ed its] assurances" from *Heller*, namely that the Court's view of the scope of the Second Amendment in no way "cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons." *Id.* (internal quotation mark omitted).

In the wake of *Heller* and *McDonald*, the Fourth Circuit directly addressed the constitutionality of Section 922(g)(1). But first, in *Chester*, the Fourth Circuit announced a "two-part approach to Second Amendment claims [after *Heller*]." *Chester*, 628 F.3d at 680. At part one, the reviewing court must consider "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Id.* If part one yielded an affirmative answer, the analysis proceeded to part two, at which point the court must "apply[] an appropriate form of means-end scrutiny." *Id.* Notably, the *Chester* Court was not faced with a constitutional challenge to a law barring possession of firearms by felons, but rather a statute

4

proscribing firearm possession by domestic violence misdemeanants. *See id.* at 677 (considering challenge to 18 U.S.C. § 922(g)(9)).

Then, in *Moore*, faced with a challenge to Section 922(g)(1), the Fourth Circuit announced a "more streamlined analysis" for constitutional claims targeting firearms regulations deemed "presumptively lawful" in *Heller*. *Moore*, 666 F.3d at 318. To that point, the *Moore* Court "not[ed] the unanimous result reached by every court of appeals that § 922(g)(1) is constitutional, both on its face and as applied." *Moore*, 666 F.3d at 316. The *Moore* Court reached the same result, holding that "the clear declaration in *Heller* that [] felon in possession laws are a presumptively lawful regulatory measure resolves th[e defendant's facial] challenge [to Section 922(g)(1)] fairly quickly." *Id.* at 318; *see also id.* ("We believe this differentiation by the Supreme Court has some impact on the Second Amendment *Chester* analysis when the regulatory measure at issue is [] an identified presumptively lawful regulatory measure."). The Court then rejected the defendant's as-applied challenge to Section 922(g)(1), on the grounds that the defendant possessed an "extensive and violent criminal history." *Id.* at 320.

Finally, in *Pruess*, the Fourth Circuit confirmed that courts need not employ *Chester's* two-step analysis for constitutional challenges to Section 922(g)(1). *See United States v. Pruess*, 703 F.3d 242, 246 (4th Cir. 2012) (explaining that, "***unlike*** *Chester* (which involved a misdemeanor domestic violence offender), *Moore* addressed a Second Amendment challenge to the ***presumptively lawful*** felon-in-possession prohibition under § 922(g)(1)") (emphases added) (internal citation omitted). Put another way, because such a law was deemed a "presumptively lawful regulation [in *Heller*, it] could not violate the Second Amendment unless, as applied, it proscribed conduct falling within the category of law-abiding responsible citizens using arms in defense of hearth and home." *Id.* at 245 (citing *Moore*, 666 F.3d at 319, and *Heller*, 554 U.S. at

5

635) (cleaned up). Accordingly, after *Moore* and *Pruess*, a reviewing court's task is simpler when evaluating a constitutional challenge to Section 922(g)(1): determine whether the defendant's possession of a firearm qualifies as "law-abiding" or "responsible" possession and/or use for self-defense. *See id.*; *see also Moore*, 666 F.3d at 320 (finding that defendant's "proffered reason for possessing a firearm, 'his fear of being robbed, such robberies being prevalent in the neighborhood in which he lived' is far too vague and unsubstantiated to remove his case from the typical felon in possession case"). Since *Pruess*, the Fourth Circuit has regularly applied the modified analytical approach first elucidated in *Moore* to constitutional challenges targeting statutes that prohibit the possession of firearms by felons. *See, e.g., Hamilton v. Pallozzi*, 848 F.3d 614, 624 (4th Cir. 2017); *United States v. Taylor*, 594 F. App'x 784, 790 (4th Cir. 2014); *United States v. Smoot*, 690 F.3d 215, 221 (4th Cir. 2012); *United States v. Kline*, 494 F. App'x 323, 324 (4th Cir. 2012).

The foregoing jurisprudential synopsis leads to *Bruen*. There, the Supreme Court held that, "consistent with *Heller* and *McDonald*, [] the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense *outside* the home." *Bruen*, 142 S. Ct. at 2122 (emphasis added). In that regard, a New York licensing scheme that required applicants to demonstrate a "special need for self-defense" prior to obtaining a license to carry a handgun in public impermissibly infringed that right. *Id.*

The *Bruen* Court went further, explaining that its analysis of New York's licensing scheme diverged from the "two-step framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Id.* at 2125; *see also id.* (recounting that "the Courts of Appeals have coalesced around" such approach since *Heller* and *McDonald*). The Court reiterated that *Heller* "decline[d] to engage in means-end scrutiny," *id.* at 2129, and explained "the standard for applying the Second Amendment [] as follows: When the Second Amendment's plain

6

text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation," *id.* The Court explained that this analytical approach was "neither a regulatory straightjacket nor a regulatory blank check." *Id.* at 2133.

This court does not interpret *Bruen* as abrogating the constitutional assessment of Section 922(g)(1) developed by *Heller*, *McDonald*, *Moore*, *Pruess*, and their progeny. For one, the Court in *Bruen* was tasked with evaluating the constitutionality of a different (state) law, and the petitioners were two "ordinary, law-abiding citizens." *Id.* at 2122, 2124-25. Plainly, the Court was not considering Section 922(g)(1), which proscribes firearm possession by those "who ha[ve] been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Second, although the Court "declined to adopt" the two-part analytical approach for Second Amendment challenges, *see Bruen*, 142 S. Ct. at 2126, it was silent on the modified analytical approach announced in *Moore* and re-affirmed in *Pruess*. Third, Justice Alito's concurrence in *Bruen* explained that the majority holding did not "disturb[] anything that [they] said in *Heller* or *McDonald* [] about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 2157. Lastly, the concurrence of Justice Kavanaugh, which Chief Justice Roberts joined, cited *Heller* and *McDonald* to "underscore [the] important point[]" that "the Second Amendment allows a variety of gun regulations," including "prohibitions on the possession of firearms by felons." *Id.* at 2162 (internal quotation marks omitted).

In sum, *Heller* and *McDonald* remain in full force. Those cases explained that prohibitions on the possession of firearms by felons represent presumptively constitutional regulatory measures. *Heller*, 554 U.S. at 626 & n.26; *McDonald*, 561 U.S. at 786. In light of those decisions, the Fourth Circuit held that Section 922(g)(1) is constitutional on its face and as applied to an

7

individual with a prior violent felony conviction. *Moore*, 666 F.3d at 316. The *Moore* Court reached that conclusion through a modified analytical approach, not the two-part approach first adopted in *Chester* and diverged from in *Bruen*. *See id.* at 318; *see also Pruess*, 703 F.3d at 246 (explaining that *Moore* "rejected [the defendant]'s challenge without proceeding through a full *Chester* analysis"). Neither did the Courts in *Moore* or *Pruess* engage in the sort of means-end scrutiny abrogated by *Bruen*. *See Moore*, 666 F.3d at 316-20; *Pruess*, 703 F.3d at 246-47.

Accordingly, this court remains bound by *Moore* and *Pruess* unless and until the Fourth Circuit or Supreme Court declare otherwise. The court thus concludes that Section 922(g)(1) is constitutional on its face, and as applied to Defendant, an individual with a prior felony conviction.[1] DE 1 at 1 (alleging prior felony conviction); *Boyce Motor Lines*, 342 U.S. at 343 n.16. The court joins many others in reaching this conclusion. *See, e.g., United States v. Williams*, No. 3:22-CR-158, 2023 WL 6368971, at *4 (E.D. Va. Sept. 28, 2023) ("*Heller's* presumptively lawful language is not mere dicta, but rather binds this Court."); *United States v. Lane*, No. 3:23-CR-62, 2023 WL 5663084, at *7 (E.D. Va. Aug. 31, 2023) ("The Fourth Circuit very well may decide its first post-*Bruen* § 922(g)(1) challenge differently than it did in *Moore* and *Pruess*. But that is the Fourth Circuit's decision to make."); *United States v. Finney*, No. 2:23-CR-13, 2023 WL 2696203, at *3 (E.D. Va. Mar. 29, 2023) ("*Moore* and *Pruess* did not rely on the second step of the two-step test that *Bruen* abrogated"); *United States v. Robinson-Davis*, No. 7:22-CR-00045, 2023 WL 2495805, at *3 (W.D. Va. Mar. 14, 2023) ("Lower courts must take the Supreme Court at its word that its recent jurisprudence, which has further strengthened Second Amendment rights,

---

[1] The court does not find, as Defendant suggests, that the United States waived its argument that the statute is constitutional as applied to Defendant. *See* DE 39 at 9. The United States did provide argument that the Fourth Circuit has regularly rejected as-applied challenges to felon-in-possession statutes. DE 34 at 9 n.2. Moreover, Defendant failed to meaningfully develop any argument in the Motion that Section 922(g)(1) was unconstitutional as applied to Defendant. *See* DE 31 at 1-2 (providing argument that statute fails to pass constitutional muster after *Bruen*, which would render it unconstitutional on its face, but providing no argument that, if constitutional on its face, statute would still be unconstitutional as applied to Defendant).

8

should not be read to push § 922(g)(1) outside the 'safe harbor' of the presumptively valid firearms regulations not subject to heightened scrutiny."); *Riley*, 635 F. Supp. 3d at 424 ("the Fourth Circuit's decisions in *Moore* and *Pruess* remain good law and control the disposition of Defendant's [challenge to Section 922(g)(1)].").

## III. CONCLUSION

*Bruen* did not overrule *Moore* or *Pruess*, and this court cannot. Section 922(g)(1) is constitutional on its face and as applied to Defendant. The Motion [DE 31] is DENIED.

SO ORDERED this  23   day of October, 2023.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE